**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* ORLY GENGER,<br><br>                    Debtor. | Chapter 7<br><br>Case No. Case No. 19-13895 (JLG) |
| ORLY GENGER,<br>                         Petitioner,<br><br>          -against-<br><br>MICHAEL OLDNER,<br>                         Respondent. | Adv. Proc. No. 26-01052 (JLG) |

**JUDGMENT CREDIOTOR SAGI GENGER'S SUPPLEMENTAL OPPOSITION TO
DEBTOR ORLY GENGER'S MOTION TO REMAND TO STATE COURT**

Judgment creditor/party-in-interest Sagi Genger ("**Sagi**"), by and through his undersigned counsel, respectfully submits this supplement to the opposition of Respondent Michael Oldner ("**Oldner**") to the motion of Petitioner Orly Genger ("**Orly**") to remand.  Sagi joins in Oldner's opposition, which directly implicates his bankruptcy claim.

1.      A bankruptcy case is supposed to help a good faith debtor deal with his or her debts and obtain a fresh start. That is not the case here.  Orly brought this bankruptcy case in bad faith immediately after losing an appeal to the Second Circuit, solely in order to frustrate the efforts of one particular creditor, her brother Sagi, to collect on a $3.2 million judgment representing Orly's half of a financial commitment they made to support their mother, Dalia Genger ("**Dalia**"). Notably, Sagi was seeking to collect that judgment <u>not</u> from Orly herself, but rather from her fraudulent transferees – *i.e.,* her husband, her father, and her father's creditors.

2.      According to her bankruptcy schedules, Orly has no meaningful assets beyond a 50% share in an Austin condo, which she claims as her homestead.  Yet according to Judge Forrest

9329750v.3

(ret.) of this District, in two summary judgment decisions, both of which were unanimously affirmed by the Court of Appeals, in 2013 (*i.e.,* just six years prior to her filing): **"Orly monetized her beneficial interest in the [TRI] shares for \$32.3 million."** *Genger v. Genger,* 76 F. Supp. 3d 488, 501 (S.D.N.Y.), *aff'd,* 663 F. App'x 44 (2d Cir. 2016) (emphasis added); *Genger v. Genger,* 2018 WL 3632521 (S.D.N.Y.), *aff'd,* 771 F. App'x 99 (2d. Cir. 2019).

3.      As set forth in those rulings, Orly obtained that windfall from corporate shares distributed to her by Dalia as part of the latter's 2004 divorce settlement. In exchange, Orly agreed, in writing, to indemnify Sagi for half of certain support obligations to Dalia. In the intervening years, however, Orly grew estranged from her mother, and thereafter, having extracted all of the gains from her support agreement, sought to renege on her concomitant duties. Twice, the U.S. District Court, affirmed by the Second Circuit, said she could not do that.

4.      Knowing that day would come, Orly spent years trying to shield the \$32.3 million from Sagi and, thus, Dalia, by transferring that windfall to, and encumbering it in favor of, various insiders—most notably her husband, Eric Herschmann ("**Herschmann**"), pursuant to a \$2 million secured promissory note he procured from his wife while actively representing her in multiple litigations.  In June 2019, Judge Broderick of the District Court was on the cusp of hearing a turnover motion by Sagi to undo the fraudulent conveyances (*Genger v. Genger*, Case No. 1:17-cv-08181), when Orly filed a Chapter 7 petition in the Western District of Texas.

5.      The Texas Bankruptcy Court transferred the case to this District, chastising Orly and Herschmann for their bad faith forum-shopping: "As Judge Austin observed this Debtor can and will claim residence in a location that suits her legally strategic interests." Bankr. Dkt. 173 at 9 (citing *Genger v. Genger*, 2019 WL 12420871, *3 (W.D.Tex. Apr. 15, 2019) ( "Herschmann and Genger, as owners of multiple residences, have used this fact to their legal advantage by claiming to reside in whichever location most suits their legal needs at the time")).

6.      In sending the case here, Texas Bankruptcy Court further made clear that, once the case has been transferred: "the Debtor will be required to explain what happened to 32 million dollars, and in either a fraudulent transfer suit or the hearing to consider a 9019 settlement of that suit. Findings made by the New York courts previously may well have collateral estoppel effect in this latest layer of  litigations spawned by the bankruptcy filing." Bankr. Dkt. 173 at 4-5.

7.      Yet almost seven years later, that still has not happened.  Instead, Orly and Herschmann (a former Kasowitz partner), with the aid of other insiders, have tied the Bankruptcy Court in knots, while avoiding any judicial review of the main issue in the case—allocation of the $32.3 million in litigation proceeds.  At last count, the main bankruptcy case has seen 787 docket entries, exclusive of the thirteen related adversary proceedings.

8.      The situation has gotten so bad that even the Kasowitz law firm, which represented Orly for many years, has finally had enough.   In a recently public court filing, the firm revealed that "Herschmann was terminated from the Firm" after "[a]n internal review ha[d] shown that Herschmann "saddled the Firm with millions in unpaid fees after orchestrating the scorched earth defense of a client he romanced and later married. He also had the Firm do free work for his wife when she declared bankruptcy during their marriage." *Herschmann v. Kasowitz*, N.Y. Sup. Ct. Index No. 656499/2025, NYSCEF Doc. No. 4, pp. 4-7 (emphasis added).

9.      In the meantime, Orly continues to scorch the earth.  After seven years of litigating in Bankruptcy Court–which was her chosen forum—Orly now claims she was "forced" into bankruptcy and is suing to remove the trustee of her trust, Oldner, to top him from prosecuting his fraudulent conveyance action in the District Court (Manhattan Safety Maine, Inc. v. Bowen, SDNY Case #:19-5642) where he will soon be able to obtain the long-awaited judicial ruling as to who owns the $32.3 million at issue.  Any successful collection directly impacts Sagi, as it will reduce his bankruptcy claim pursuant to an intercreditor agreement."

10.     Plainly, Orly and her fraudulent transferees do not want this to happen, and so she has brought a last-ditch state court suit to try to enjoin and remove her trustee in order to stop his collection efforts.  Whatever the merits of Orly's latest suit (we believe there are none), the claims she raises therein contain significant overlap with several matters currently pending before the Bankruptcy Court, all of which should be heard together.  Remand should be denied.

Dated:  New York, New York
        June 9, 2026                              EMMET, MARVIN & MARTIN, LLP


                                                  By:  /s/ Thomas A. Pitta
                                                  Thomas A. Pitta
                                                  John Dellaportas
                                                  Jennifer Pierce
                                                  120 Broadway
                                                  New York, NY 10271
                                                  Tel. (212) 238-3000

                                                  *Attorneys for Judgment Creditor
                                                  Sagi Genger*