**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Orly Genger,<br><br>          Debtor. | Chapter 7<br><br>Case No. 19-bk-13895-JLG |
| Orly Genger,<br><br>          Petitioner,<br><br>v.<br><br>Michael Oldner,<br><br>          Respondent. | Adv. Proc. No. 26-01052-SAB<br><br>Hon. Shireen A. Barday |

### ORLY GENGER'S REPLY IN FURTHER SUPPORT OF MOTION TO REMAND

Petitioner Orly Genger, beneficiary of the Orly Genger 1993 Trust hereby replies in

further support of her motion to remand and in response to the opposition filed by respondent

Michael Oldner and improper supplemental opposition filed by non-party Sagi Genger, and

respectfully states as follows:[1]

### PRELIMINARY STATEMENT

Oldner's opposition—long on irrelevant speculation and short on applicable law—only

confirms that Orly's Article 77 proceeding should be remanded and that he should be removed as

trustee. Oldner makes four arguments: that the Article 77 proceeding "arises in" this bankruptcy

because it affects this Court's orders; that "related to" jurisdiction exists because a replacement

trustee might affect the Trust's discharge objection and proof of claim; that the abstention factors

---

[1] Capitalized terms used by not defined herein are defined in Orly's opening memorandum of law in support of this
motion ("Opening Mem."), filed at ECF No. 3.

favor retention; and that his removing the proceeding did not violate the TRO because he did so in his "individual capacity." Each argument, to say the least, fails.

The "arises in" argument rests on a misrepresentation of the TRO and requires two levels of pure speculation—that this Court will issue an order affecting Oldner as Trustee, and second, that a replacement trustee will interfere with such an order. There is now no order in the Oldner Adversary Proceeding that could be interfered with, and a proof of claim is not a court order. And whatever a successor trustee, if appointed, decides to do in this Court—bound by independent fiduciary duties to the Trust and its beneficiary—is both none of Oldner's business and in any event subject to this Court's jurisdiction.  The narrow question before the state court—whether Oldner is fit to serve as trustee under New York law—is categorically different from the monetary and equitable claims in the pending bankruptcy proceedings, and the state court's determination will not conflict with any order this Court makes. Moreover, the right to remove a trustee for breach of fiduciary duty under EPTL § 7-2.6 exists entirely independent of bankruptcy.  This proceeding challenges only whether Oldner is fit to serve as trustee of a New York spendthrift trust under New York law.

Oldner's "related to" argument is invalid and foreclosed by, among other things, Oldner's own prior positions.  For years, he successfully argued to this Court that Trust proceedings have nothing to do with this bankruptcy and that this Court would lack jurisdiction over challenges to his fiduciary conduct as trustee.  Having prevailed on those positions, he cannot reverse course now because the same principle no longer suits him.

The abstention argument relies on a false premise—remand will not "vest the state court with control" over the Oldner Adversary Proceeding or the proof of claim—the Trust controls those proceedings, not the state court, whether Oldner serves as trustee or a replacement does.

2

When the abstention factors are evaluated in light of what the Article 77 proceeding actually involves—a pure question of New York trust law already before Justice Ramseur in a streamlined statutory proceeding—every relevant factor favors remand.

The "individual capacity" argument is refuted by Oldner's own Notice of Removal. In that document, Oldner justified removal by asserting that the outcome would affect Trust proceedings and Trust claims in this Court—every one of which is a Trust interest, not a personal one. He cannot invoke Trust interests as his basis for removal and simultaneously claim he acted as a private individual. In short, Oldner's arguments reveal what this removal really is: an attempt by a trustee to use federal court removal to evade a state court order issued against him—the very kind of self-dealing that warrants his removal under New York law.

Orly's motion to remand should be granted.

## **ARGUMENT**

### A. This Action Does Not Arise in or Relate to the Bankruptcy

Oldner contends that this state-law action was properly removed because it affects this Court's own orders and a replacement trustee will take steps that "impact the bankruptcy estate." To say the least, neither contention is valid.

Oldner purports to be concerned entirely with what he calls "orders to be issued by this Court" in the Oldner Adversary Proceeding in which Oldner, ostensibly as trustee and on behalf of the spendthrift Orly Trust, objects to the discharge of the Trust's own beneficiary and on the proof of claim the Orly Trust filed.  Opp. at 8.  There is no order in the Oldner Adversary Proceeding—which is pending decision on Orly's fully submitted motion to dismiss.  Case No. 19-ap-1447-JLG, at Dkt No. 18.   Arguing that future orders of this Court will be interfered with requires two levels of speculation—first, that this Court will issue an order affecting Oldner as Trustee, and second, that a new trustee will interfere with such an order.  That is not 'arises in'

3

jurisdiction. *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339 (2d Cir. 2018) (acknowledging 'related to' jurisdiction 'is not limitless'); Opening Mem. at 7 fn. 2. And of course, a proof of claim is not a court order.

Moreover, to argue, as Oldner does, that a successor trustee would interfere with this Court's orders is absurd. Whatever a successor trustee, if any, appointed by the state court decides to do in this Court, subject to and bound by his or her fiduciary duties to the Trust and its beneficiary, is not only none of Oldner's business, but it will also be in any event itself subject to this Court's jurisdiction.

The contrast with Oldner's own cases is instructive. In *Moelis & Co. LLC v. Wilmington Trust FSB (In re Gen. Growth Props., Inc.)*, 460 B.R. 592 (Bankr. S.D.N.Y. 2011), the court determined that the removed proceeding would directly affect the implementation of the bankruptcy court's Chapter 11 plan confirmation order and the distribution of proceeds to noteholders under that confirmed plan—the removed action therefore not only "related to" the bankruptcy, it was a core proceeding arising in the bankruptcy case: "Moelis is seeking to enjoin the disbursement of payments from the bankruptcy estate to the Noteholders, which clearly impacts upon the administration of the Reorganized Debtors' estates and the implementation of the Plan." *Id.* at 599-600. Oldner's other rises in" authority, *In re Tronox*, 603 B.R. 712, 722 (Bankr. S.D.N.Y. 2019), involved alleged legal malpractice that "occurred entirely during the bankruptcy case and in the context of the bankruptcy proceedings" and "relate[d] to bankruptcy-specific rights and tasks and could only have arisen in a bankruptcy context."

Here, unlike those cases, the state court action does not arise out of or relate to the bankruptcy because, among other things, the right to remove a trustee for breach of fiduciary duty exists under state-law EPTL § 7-2.6 wholly independent of bankruptcy. *See also In re*

4

*Ebury St. Cap., LLC*, 664 B.R. 639, 647 (Bankr. S.D.N.Y. 2024) ("arises in" covers only proceedings that have 'no existence outside of the bankruptcy'). The present case, which does not involve the administration of a confirmed plan or planned estate distributions, let alone potential interference with such plan, is nothing like *Moelis & Co* or *Tronox*.

In short, even if a new trustee chooses to move to voluntarily dismiss the adversary proceeding before this Court rules on Orly's pending motion to dismiss, or withdraws the Orly Trust's proof of claim, that would not interfere with any order of this Court. A new trustee exercising such judgment is no different than Oldner himself exercising his judgment as trustee to reverse course, just as any plaintiff controls its own litigation, and any creditor decides whether to press its claim. Further, dismissal of the adversary proceeding would be subject to conditions set by this Court, such that Oldner's removal by the state court could not possibly interfere with this Court's handling of the bankruptcy proceeding. *See* Fed. R. Bankr. P. 9041.[2]

Oldner's argument that remanding this action creates a risk of conflicting rulings is just as patently wrong. He asserts that a ruling in the state trustee removal action may conflict with the pending rulings in this Court on the 2022 Adversary Proceeding and the Sanctions motion, in which Orly seeks monetary damages, not just against Oldner, but his coconspirators. But the relief sought in the trustee removal action does not include monetary damages and the issues in that action are much narrower than the issues pending here. The relief Orly seeks in the state action—removal of Oldner as trustee—is governed by EPTL § 7-2.6, which authorizes removal when a trustee has "violated or threatens to violate his trust" or is "unsuitable to execute the trust." That is a narrow equitable inquiry focused solely on Oldner's fitness for office—

---

[2] Oldner also mischaracterizes Orly's opening memorandum by contending that Orly argued that a replacement trustee "'may' withdraw the trust's objection to her discharge." Opp. at 1, 8. Orly actually argued that the replacement trustee—using his or her independent judgment and carrying out the fiduciary duties that would be owed—"may <u>or may not</u>" seek to dismiss the adversary proceeding. Opening Mem. at 3, 7.

categorically different from the monetary damages and equitable subordination sought in the 2022 Adversary Proceeding and sanctions motion, which will require adjudication of the full scope and consequences of Oldner and his co-conspirators' alleged multi-year scheme. Thus, while Oldner's misconduct is at issue in the trustee removal action, it does not overlap so completely with the issues pending here that removal jurisdiction is warranted. In fact, the overlap here is no greater than the overlap between the bankruptcy proceedings and the MSM Action—both of which involve disputed ownership of the $32.3 million settlement proceeds— which Oldner successfully argued is not enjoined by the automatic stay.

Oldner's reliance on *In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir. 1992), and *Cal. Pub. Employees' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004), is misplaced. The decision in *Cuyahoga* involved claims going directly to the allocation of estate property between competing creditors—the heart of the bankruptcy distribution. *WorldCom* involved thousands of securities fraud claims by investors in the bankrupt debtor whose resolution would directly affect the estate. Neither resembles a trustee-fitness determination under state trust law.

Lastly, Oldner claims, without elucidating it, that the state-court Article 77 action might result in "a state judge mak[ing] findings that are potentially binding on this Court." Opp. at 9. But that is obviously not so. The ruling sought in that action is removal and replacement of Oldner as trustee. How could that possibly "bind" this federal court in any respect?

## B. Judicial Estoppel Bars Oldner's Position

Oldner argues that judicial estoppel is inapplicable because this case concerns "whether the Orly Trust's pending discharge objection and its proof of claim relate to this Bankruptcy Case." Opp. at 10. But the only relief sought in Orly's Article 77 proceeding is the removal of Oldner as trustee. It has nothing to do with the proof of claim or the adversary proceeding. Just

6

as the Orly Trust may pursue claims outside the bankruptcy, Orly, as beneficiary of a spendthrift

trust shielded from bankruptcy, may bring this proceeding in state court.

Oldner cannot escape the record.  As shown in Orly's opening memorandum, Oldner

previously argued that this Court would not have jurisdiction over challenges to his fiduciary

conduct as trustee, and that Trust proceedings have nothing to do with the bankruptcy estate.

Judge Garrity agreed with that in allowing Oldner, as trustee of the Trust, to proceed with actions

on behalf of the Trust outside of the bankruptcy proceeding.  *See* Opening Mem. at 7-8; Main

Case ECF No. 755 at 26-27.  Having prevailed on those positions, he cannot now claim that a

proceeding challenging his fiduciary conduct as trustee "relates to" this bankruptcy and has a

"conceivable effect" on the estate.  *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 72 (2d Cir. 1997).

Oldner's response—that his prior positions addressed only whether Trust claims are "estate

property" under § 541, which he claims is a different question—does not hold up.  When Oldner

told this Court it "would not have jurisdiction" over challenges to his fiduciary conduct, he was

not hedging.  He directly asserted that this Court had no business adjudicating his exercise of

Trust duties.  The state Article 77 action involves only an adjudication of his fitness to exercise

those duties, which is exactly what he previously claimed is not within the jurisdiction of the

federal bankruptcy court

## C. Discretionary Abstention Is Warranted

Oldner's analysis of the discretionary abstention factors is equally unavailing.  His

premise—that remand will "vest" the state court with control over the Oldner Adversary

Proceeding and the Proof of Claim," Opp. at 11—is false.  The Orly Trust, controlled by its

trustee—whether Oldner or a replacement—has exclusive control over what the Trust does in

those proceedings.  The state court will control nothing pending in this Court.

7

As to factor 1 (efficient administration), Oldner cites *In re Pan Am Corp.*, 16 F.3d 513 (2d Cir. 1994) for the risk of conflicting rulings, but that decision did not in fact address that risk at all.  Rather, the court simply held that where the plaintiffs were Scottish and the law in question was British, the district court did not abuse its discretion in transferring personal injury cases filed in Florida to the Southern District of New York (the site of Pan Am's bankruptcy proceeding) where "Florida's only interest in the plaintiffs' cases is that two of the defendants were incorporated there."  *Pan Am Corp.*, 16 F.3d at 517.  Meanwhile, here, the state court was already proceeding efficiently under Article 77's streamlined procedure.  Adding this matter to a docket already carrying no fewer than seven other adversary proceedings increases burden; it does not reduce it.

On factor 2 (state law predominance), Oldner relies on *U.S. Bank National Association v. Triaxx Asset Management LLC*, No. 18-CV-4044 (BCM), 2021 WL 4993895 (S.D.N.Y. Oct. 26, 2021).  *Triaxx* is inapposite.  The court retained jurisdiction there because the same parties were already litigating the same disputes in a pending federal action before that very court under the same indenture—the Article 77 claims were inextricably intertwined with the ongoing federal proceedings between identical parties.  There is no such pre-existing federal action here.  Further, in *Triaxx*, unlike here, there were also grounds for removal under the Edge Act, a federal statute.  This case presents the pure state law issue of breach of fiduciary duty owed to the beneficiary of a New York spendthrift trust, governed by EPTL § 7-2.6 and adjudicated by the state court on equitable grounds. Factor 2 strongly favors remand.

Factors 5, 6, and 7 (independent jurisdictional basis; relatedness; core proceeding): There is no independent basis for federal jurisdiction other than § 1334—which is precisely what factor 5 asks, and which Oldner tacitly concedes.  This matter is not core to the bankruptcy and does

not relate to any core proceeding.  Oldner cites *In re Fasciglione*, 665 B.R. 594 (Bankr. S.D.N.Y. 2024), for the abstention standard.  Orly cited the case as well.  Opening Mem. at 9.  In *Fasciglione*, the court abstained and remanded a state court matter involving the debtor's interest in a state-law entity, finding that state law issues predominated and the proceeding was tangentially connected to the bankruptcy.  The same logic applies here with even greater force.  All three factors favor remand.

On factor 8 (feasibility of severance), the question of whether Oldner should be removed as trustee under EPTL § 7-2.6 is entirely separable from the monetary and equitable subordination claims pending in this Court.  They involve different legal standards and different relief.  Severance presents no difficulty.

On Factor 9 (docket burden), as noted, adding this matter to no fewer than seven other adversary proceedings increases burden.  Oldner asserts in a footnote that Orly is engaging in claim-splitting by bringing the Article 77 removal proceeding in state court rather than in the pending 2022 adversary proceeding.  His own case defeats the argument.  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000), holds that a plaintiff has "no right to maintain two actions on the same subject in the same court, against the same defendant at the same time."  The Article 77 proceeding is in New York Supreme Court; the 2022 adversary proceeding is in this Court.

Factor 10 (forum shopping): It is Oldner—not Orly—who forum-shopped.  He removed a state court proceeding, without notice to Orly or to Justice Ramseur, without complying with or challenging the TRO, and on the eve of the scheduled state-court hearing.  His obvious purpose was to evade a court that had ruled against him. Factor 10 weighs strongly in favor of remand.

9

Finally, Oldner argues that because courts in this district have treated the analyses under discretionary abstention and equitable remand as "essentially identical," *Kerusa Co. LLC v. W10Z/515 Real Est. Ltd. Partnership*, 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004), this Court should not exercise equitable remand either.  But the same factors that support discretionary abstention equally support equitable remand.  As all relevant factors favor remand, equitable remand is warranted on the same grounds.

**D. Oldner Violated the TRO**

Oldner again mischaracterizes the TRO.  Opp. at 4. It does not restrain the Oldner Adversary Proceeding from continuing.  That action remains pending and is not stayed, and Orly's motion to dismiss it is *sub judice*.  The TRO requires only that Oldner provide prior notice to Orly and the state court, and obtain the state court's approval, before acting on behalf of the Orly Trust. When Oldner removed this action without notifying Orly or the state court—let alone seeking the court's approval—he violated it because he removed an Orly Trust question, whether he should be removed as trustee, not a legal issue bearing on him individually.

Oldner's claim that he was acting in his "individual capacity" in removing this action is further belied by his own Notice of Removal defeats this.  In that Notice, Oldner asserted jurisdiction on the ground that the [Article 77 action] "arises in" the bankruptcy because the TRO "purports to stay" the Oldner Adversary Proceeding, and that the outcome "would affect the pending Oldner Adversary Proceeding, affect the property of the bankruptcy estate, affect claims against the estate."  ECF No. 1 ¶¶ 11-12.  Every one of those purported grounds for removal is an interest he asserted on behalf of the Orly Trust.  In that way he is asserting removal is in the interest of the Orly Trust, not his own interests.

More to the point, his "individual capacity" argument also confirms the depth of Oldner's fiduciary abdication.  He has no individual right or interest in serving as trustee—he holds that

office solely for the benefit of Orly and the Trust. He is named as respondent in this action only because he is the trustee.  Removing the proceeding to evade a TRO issued against him serves no interest of the Trust; it serves only his personal interest in retaining his position—the very conduct warranting his removal under EPTL § 7-2.6.[3]

In any event, to have complied with the TRO, Oldner would have had to inform Orly and the state court of his intention—and, according to him, his personal 'statutory right'—to remove this case.  His assumption that the state court would have refused is yet more speculation, which runs throughout his opposition.

His Supremacy Clause argument is also wrong: the cases he cites—*General Atomic Co. v. Felter*, 434 U.S. 12 (1977), and *Donovan v. City of Dallas*, 377 U.S. 408 (1964)—both involved state court injunctions that expressly prohibited the filing of federal actions. The TRO here does nothing of the kind.  If Oldner believed it was overbroad, his remedy was to seek modification from Justice Ramseur before acting—not to ignore it.  *Walker v. City of Birmingham*, 388 U.S. 307, 320 (1967).  Choosing to ignore the order entirely was not the exercise of a constitutional right; it was contempt.

### E. Sagi Genger's "Supplemental Opposition" Must Be Disregarded

Sagi Genger's "supplemental opposition" (Dkt. No. 15) is not a memorandum of law.  It is an unhinged and sanctionable vehicle for Sagi to reiterate the same false and inflammatory narrative he has for years injected into every proceeding against his only younger sister.  It offers no legal analysis of the jurisdictional question before the Court.  Moreover, Sagi is not a party to Orly's Article 77 trustee-removal proceeding, has no standing on the remand issue, and filed his

---

[3] In deciding whether to remove Oldner, the state court will no doubt take into account his conduct in this proceeding—including, notably, his assertion that "Orly has no economic interest in the Orly Trust," Opp. at 3, notwithstanding that she is its primary beneficiary.

11

submission well after the deadline Judge Garrity set.  Section 1109(b) of the Bankruptcy Code is the only provision authorizing a creditor to appear and be heard in an adversary proceeding, and it applies by its terms to Chapter 11 cases only.  This is a Chapter 7 case.  Sagi cites no authority for his participation here, and none exists.

Sagi's submission devotes most of its four pages to a retelling of the Genger family litigation history, which, even were it true, which it is not, is utterly irrelevant to whether this Court has jurisdiction over Orly's Article 77 proceeding, or whether the discretionary abstention and equitable remand factors favor remand.  It adds nothing to the jurisdictional analysis.

One example of Sagi's irrelevant misrepresentations is his assertion that the courts have found that "Orly monetized her beneficial interest in the [Orly Trust] shares for $32 million," citing *Genger v. Genger*, 76 F. Supp. 3d 488, 501 (S.D.N.Y. 2015), and its affirmance by the Second Circuit.  Sagi omits what the Second Circuit actually said: "But surely any $32 million transaction for her shares would confer upon her more than *a peppercorn, which is all we need to conclude (and all we do conclude) as to the extent of any benefit she received*."  *Genger v. Genger*, 663 F. App'x 44 (2d Cir. 2016) (emphasis added).  The Second Circuit made no finding that Orly received $32.3 million.  It found only that she received consideration sufficient to support a contract—more than a peppercorn.

Judge Garrity confirmed that Sagi's assertion is false.  In denying Sagi's motion to dismiss Orly's bankruptcy, Judge Garrity rejected Sagi's assertion that the $32.3 million constituted Orly's property:

> In determining that Orly monetized her beneficial interests in the TRI shares for $32.3 million, the district court did not adjudicate what portion of the Settlement Proceeds, if any, belong to Orly, as opposed to the other[s].  [T]he Second Circuit did not reach the issue of whether Orly in fact received such payments attributable to her portion of the TRI marital shares.

Main Case Dkt. No. 615 at pp. 49-50 (internal quotations omitted).

Sagi also goes so far as to quote unproven and false allegations about Orly's husband made by his former firm in a lawsuit he recently filed to recover unpaid compensation. Among other things, Sagi implies—in his typical fashion by stringing together sentences that are pages apart—that the former firm said that it terminated her husband because he had improperly failed to bill Orly for representing her in her litigation with Sagi.  That is false—the facts are indisputable that the firm knew all about and consented to the years of representation (which Orly otherwise could not have afforded) and that the firm terminated her husband only after he had already given notice of his resignation from the firm, and it did so for reasons having nothing to do with the later false allegations it raised for the first time only after he sued for unpaid compensation due him. And again, these allegations, even if they were true, are utterly irrelevant to Orly's motion to remand.

Particularly because it is false and irrelevant, Sagi's submission should be disregarded and stricken from the docket. See Local Bankruptcy Rule 9006-1(b) ("Untimely papers may be rejected.").

**CONCLUSION**

For the foregoing reasons and those set forth in Orly's opening memorandum of law, the motion to remand should be granted.

Dated: New York, New York
        June 10, 2026

Respectfully submitted,

HERSCHMANN BENSON BOWEN LLP

By: */s/ Michael Paul Bowen*
Michael Paul Bowen
305 Broadway, 7th Floor
New York, New York 10007
(212) 226-4226